# N. Y. SUPERIOR COURT.

## MARGARET E. BONIFACE àgt. PETER RELYEA.

An *undertaker* was employed by an individual, to superintend and to have the whole control of the funeral and burial of his deceased father; he was to furnish a certain number of carriages and horses, one of which he was to send to the plaintiff, and carry her to the cemetery, and back to New York. The undertaker furnished the carriages and horses as agreed; and on returning from the cemetery, the driver of the carriage wherein was the plaintiff, stoped at a hotel, and left his horses unhitched; and while he was absent they ran away and throwed the plaintiff out of the carriage and injured her. The driver was the owner of the horses and carriage.

*Held*, that the plaintiff could not sustain an action for damages for such injury against the undertaker.

The relation of *master and servant* did not exist between the undertaker and the driver.

*General Term, November,* 1868.

THIS action was to recover damages for an injury alleged to have been occasioned by the negligent act of the defendant's servant.

The defendant was an undertaker, and was employed by one Darrow, [to superintend the funeral of his deceased father.

Darrow testified that he made an arrangement with the defendant to superintend and have the whole and sole control of the burial of his deceased father. That the defendant was to furnish five carriages and horses, the coffin and shroud, and attend to the opening of the grave. He was to send two carriages to the plaintiff's sister and children, and one to the plaintiff, and was to bring them from their houses to the place where the funeral was to take place, and afterwards to bring them back to New York.

The defendant sent the agreed number of carriages, presented a bill therefor to the witness, which was paid. In the bill the witness was charged for two coaches from

Boniface agt. Relyea.

Brooklyn, eleven dollars; and three coaches from New York, twenty dollars. The plaintiff testified that she rode to the cemetery in one of the coaches furnished by the defendant. That on leaving the cemetery the carriage came down and stopped at a hotel, the driver got off his box and went into the hotel. He had but shut the door of the hotel, when the horses started on a walk; they walked a few steps and then commenced to run away. The carriage struck some obsticale, and the plaintiff was thrown out and injured.

It was further proved that the defendant had said "that seeing the carriage stop, he drove up himself to the same hotel and got off and spoke to the driver;" that he said to the driver, "come inside and I will settle with you," and that he had hardly got the door closed before the horses started. This evidence, however, was contradicted by the defendant.

The defendant moved to dismiss the complaint at the close of the plaintiff's evidence on the ground, amongst others, *first*, that there was no evidence that the driver of the carriage was in the employment or under the control or direction of the defendant; and, *second*, that the plaintiff had not shown a cause of action against the defendant.

The motion was denied, and the defendant excepted.

It was proved on the part of the defendant that he did not own or keep any carriages or horses. That the carriage and horses in question were owned by the driver, and were hired for the occasion by one Moss, who was in the employment of the defendant.

The court submitted it to the jury to determine whether the driver was in the employment and under the control of the defendant, charging them, that if they found that the driver was in his service and under his control, the plaintiff could recover, if the driver was negligent and the plaintiff was free from negligence.

The defendant's counsel requested the court to charge the jury that if the defendant was himself an agent, carrying out the directions of his principal (Darrow), he was not. liable.

The court refused so to charge and the defendant excepted.

The jury found for the plaintiff, assessing the damages at four hundred dollars.

The defendant appealed.

C. BAINBRIDGE SMITH, *for appellant, defendant.*

T. E. THRESHER, *for respondent, plaintiff.*

*By the court,* MONELL, J. The main questions in this case are presented by the denial of the motion to dismiss the complaint, on the ground that the plaintiff had furnished no evidence that the driver of the carriage was in the employment or under the control or direction of the defendant; and by the refusal to charge the jury that if the defendant was the agent of Darrow, who employed him, he was not liable. I do not think any question can properly be raised now on the evidence subsequently furnished by the defendant, that the carriage and horses were owned by the driver.

The motion to dismiss the complaint was not renewed after such evidence had been given, nor was there any request to direct, upon such undisputed facts, a verdict for the defendant.

The ground, therefore, upon which the motion to dismiss the complaint was made, coupled with the request to charge the jury, present the only question for examination.

The evidence was that Darrow employed the defendant as undertaker, to superintend and to have the whole control of the burial of his (Darrow's) deceased father. The defendant was to furnish five carriages and horses, one of which he was to send to the plaintiff and carry her to the cemetery and back to New York. The carriages were fur-

nished; and the negligent act of the driver of the one sent to the plaintiff and in which she was returning from the cemetery, caused the injury.

There was no evidence whatever that the driver of the carriage was the servant of the defendant, and such relation could be implied only from the engagement of the latter to furnish carriages for the funeral, and furnishing them in pursuance of such engagement. And in submitting the case to the jury, they were instructed that if they should find the driver of the carriage was the servant of the defendant, he was liable; under which instructions, the jury were allowed to determine that the relation of master and servant existed from the mere fact of the defendant's engagement with Darrow.

By their verdict they must have wholly rejected the undisputed fact that the driver of the carriage and horses was their owner, which fact necessarily, I think, established conclusively that the relation of master and servant did not exist.

The question of *respondeat superior* applies only to the immediate employer of the servant or agent through whose neglience an injury occurs. There cannot be two superiors, and the difficulty in all the cases has been in determining whose servant the person was who did the injury; when that is determined, the principle of *respondeat superior* at once attaches, and renders the immediate master or employer liable.

It appears to me to be quite clear, that if it be conceded that the driver of the horses was their owner and was merely employed by the defendant for the service specified in his engagement with Darrow, that such employment alone would not make the driver the servant of the defendant. The mere hiring of a person is not always sufficient to create the relation of master and servant. There must be, besides the hiring, some degree of actual control over the person hired, and some right to direct him from time

Boniface agt. Relyea.

as the master may see fit; for the responsibility of the master begins and ends with his control over and his right to direct his servant; and, therefore, the master is held to a reasonable care and discretion in the choice of a servant.

There was nothing in the contract with the driver for the use of the carriage, which created the relation of principal and agent or of master and servant. By the contract, the driver was left in the free and independent use of his own judgment, means and skill in the execution of it; and the only power the defendant could exert was merely such as one party to a contract may always exercise, without incurring the danger of expressly or impliedly establishing a different relation than that of simply contracting parties.

If in this case, by any just implication, the driver could be regarded as the agent or servant of the defendant, within the rule *respondeat superior*, then in every case of hiring a hackney-coach from a public stand, or from a livery-stable —or of a vessel to carry passengers on an excursion—or of a contract to do a specified work—the driver of the hackney or livery coach, or the officers and crew of the vessel, or the contractor, would be the servants of the employer, and the law would imply his sanction of all their acts. So that, if I hire a hackney-coach from one of the public stands to carry me to a given place, and the driver negligently injures another, I am responsible; or if I hire of the owner, a vessel and a crew to carry passengers on a pleasure excursion, I must insure their skill and competency, and be made liable for an injury to a passenger through the negligence of one the crew. I am not aware of any principle of law which sanctions such a proposition. There would be neither reason nor justice in it. The foundation of the relation of master and servant being the right to select the servant and the right to control and direct him. The owner of the hackney-coach, or of the vessel in the cases stated, would be the superior, and alone responsible.

The leading English case is *Langher* agt. *Pointer* (5 *B. & C.*, 547), where the owner of a carriage hired of a stable-keeper a pair of horses to draw it for the day. The stable-keeper furnished the driver, through whose negligent driving an injury was done to a horse belonging to a third person, and it was held that the owner of the carriage was not liable. And the case was not affected though the owner of the carriage selected from many, the particular servant who drove the horses. The court said: "If the driver be the servant of the job-master, we do not think he ceases to be so by reason of the owner of the carriage preferring to be driven by that particular servant, any more than a hack postboy ceases to be the servant of an inn-keeper, where a traveler has a preference of one over the rest, on account of his sobriety and carefulness."

And in *Quanman* agt. *Burnett* (6 *M. & W.*, 508), where the owner of a carriage hired the driver, and provided him with a livery, which he left at their house at the end of each drive, and the injury in question was occasioned by leaving his horses while so depositing the livery in their house, the court without hesitation relieved the owner from responsibility. But they said, that if the livery had been left under a general or special order to do so, without leaving any one at the horses' heads, the owners would have been liable; for a person who is not the general master of a servant, may make him his servant in a particular transaction by specially directing him thereto, or by a subsequent adoption of what he has done.

The decision in these cases was put upon the ground that the driver could not be the servant of both the livery stable-keeper and the person in the carriage; as LITTLEDALE, Justice, said, "he was the servant of one or the other, but not the servant of one and the other."

In the case of *Powels* agt. *Hudson* (36 *Eng. L. & E. R.* 162), the distinctions are clearly drawn. The action was for failing to deliver baggage. The defendant was the pro-

prietor of a cab which he let for hire to a driver, through whose negligence the baggage was lost; and Lord CAMP-BELL, Ch. J., said if the cab and horses were let to the driver and he was to be considered the bailee, and entitled to make what use he pleased of them, the driver could not render the defendant liable on any contract into which he entered for the use of the cab; and the plaintiff being without remedy against the proprietor, could sue the driver. There were facts, however, in that case which justified the remark, that it was "quite different from hiring a job-carriage, or a carriage and horses to be driven by the hirer, or his servants, when the hirer becomes bailee, and can in no sense be considered the servant of the proprietor." Most of these decisions, as well as *Milligan* agt. *Ridge* (12 *Adol. and Ellis*, 737), and *Allen* agt. *Haywood*, (7 *Id.* [*N. S.*] 960 ; *Martin* agt. *Temperly*, (4 *Q. B.*, 298) ; *Gayford* agt. *Nichols* (9 *Exch.*, 702), are reviewed at length, and fully approved in *Blake* agt. *Ferris* (5. *N. Y. R.*, 48), where MULLETT, J., after stating several kinds of servants who, though actually employed by a third person, are, in fact, employed for and in the name and at the expense of the primary principal, and are continued subject to his control, says : " But when a man is employed in doing a job, or piece of work, with his own means and his own men, and employs others to help him, or to execute the work for him and under his control, he is the superior who is responsible for their conduct, no matter who he is doing the work for. To attempt to make the primary principal or employer responsible in such cases would be an attempt to push the doctrine of *respondeat superior* beyond the reason on which it is founded.

I may also refer to *Kelly* agt. *The Mayor, &c., of New York*, (11 *N. Y. R.* 432) ; *Conrad* agt. *Trustees of Utica* (16 *Id.*, 158) ; *Storrs* agt. *City of Utica* (17 *Id.*, 104). Applying the principles established by the cases referred to, to the one before us, it is apparent that the relation of master and servant did not exist between the defendant and the driver ;

and as the defendant's liability rests, in part at least, upon the existence of such relation, he is not responsible for the injury the plaintiff received through the negligence of the driver.

It may be said, however, that although the relation of master and servant did not exist, or could not fairly be presumed from the mere act of hiring the driver, yet that the defendant made the driver his servant by asking him to go into the hotel and he would settle with him. But I do not see how that fact alters the case. It may be that the invitation to the driver contributed to the accident, inasmuch as it might be said that the driver would not have left the horses had he not been solicited by the defendant to go into the hotel. But if the driver was his own master, as I have endeavored to show he was, and not subject to the will of the defendant, then his accepting the invitation was a purely voluntary act. He could have declined it; and it cannot be pretended that the defendant could even have directed him to obey the request, or could have exercised any other power or control over him in the matter.

The driver being himself the superior, he could not become the servant of the defendant, except under some contract, express or implied, creating him such—a mere tortious act, contributing to the accident, not being sufficient to authorize any such implication. As well might a stranger who had invited the driver into the hotel, be held to have made the driver his servant, as to imply any such relation from a like act of the defendant. If, therefore, the liability of the defendant rested upon the relation of master and servant (*Stevens* agt. *Armstrong*, 6 *N. Y. R.*, 635), it was necessary to establish such relation affirmatively by competent proof, which the plaintiff entirely failed to do in this case.

It was not enough, in my judgment, to show that the carriage and driver were furnished by the defendant, without also showing some power over, or right to control the

driver, or some fact to indicate that he was in the defendant's service. Instead of furnishing some such evidence, the case went to the jury upon bare presumptions or conjectures, and they were left to imply the relation of master and servant from the mere fact of employment.

It seems to me that the plaintiff wholly failed to establish that the driver of the carriage was the servant of the defendant, in any sense that would render the latter liable; and that, therefore, there was no question for the jury to pass upon.

But there is another reason arising under the second ground of the motion to dismiss the complaint, which will, in some degree, illustrate the difficulties in the way of a recovery in this action.

The plaintiff was a passenger riding in the carriage upon the invitation of Darrow. As between her and any of the other persons the service was entirely voluntary. There was neither contract nor privity of contract, and the well settled rule that the omission to do a voluntary act incurs no responsibility (*Thorn* agt. *Deas*, 4 *J. R.*, 84), applies, it seems to me, to this case. It is true, if one voluntarily undertakes to do a thing, and does it amiss, he is responsible for the misfeasance; but all the cases of misfeasance are of failure to perform a contract, and there is not, that I am aware of, a case of misfeasance not founded on a contract.

If the defendant had undertaken with the plaintiff to carry her, and carried her so negligently as to cause her to be injured, he might be liable for the misfeasance, for the law would probably imply that the contract was to carry her safely (*Weed* agt. *Panama R. R. Co.*, 17 *N. Y. R.*, 362); and such a contract might possibly be implied between defendant and Darrow, but the plaintiff was neither a party nor privy to any such contract; and nothing can be implied from the transaction which would enable the plaintiff to recover upon any such ground (*Nolton* agt. *Western R. R.*

*Co.*, 15 *N. Y. R.*, 444). But for an injury caused by neg-
ligence, carriers of persons may be liable, not upon any
contract express or implied, but for the violation of a duty
which the law imposes upon them. This was so held in
*Nolton* agt. *Western R. R. Co., supra.* In that case, how-
ever, the defendant had contracted to carry the mails and
also the mail agent, and had received the plaintiff as such
mail agent, and he was injured by their negligence. The
court in sustaining the action, put its decision upon the
ground that the defendants had undertaken to transport the
plaintiff, and, although a voluntary undertaking, they were
liable.

The case of the plaintiff is no stronger than this. If I
engage a carriage of a stable-keeper, to carry a person from
my house to his own, and he is injured by the driver's neg-
ligence; or, if I carry him in my own carriage, with my
hired servant, and he is injured, am I liable for the injury?
I think not. In those cases, I can, at most, be held to ex-
ercise ordinary care, and am not answerable for the want of
care of the servant; so that, even assuming that the driver
of the carriage was the servant of the defendant, the plain-
tiff, a mere passenger without hire, could not recover unless,
as in the case stated (of a person to whom I lend my car-
riage and horses), I can be held responsible for the want of
care of my servant.

The conclusion I have reached renders it unnecessary to ex-
amine the exception to the refusal to charge the jury that,
if the defendant was the agent of Darrow and furnished the
carriages as his agent, Darrow, and not defendant, was liable.
The proposition, as matter of law, was correct, and it was
an error to decline to charge it, if there was any evidence
upon which it could operate. I think there was some evi-
dence. Darrow engaged the defendant to furnish the car-
riages; the defendant had none of his own, and procured
others—acting, therefore, in the *quasi* capacity of agent

for Darrow, and rendering him liable to the owners for the same.

But for the first reason stated, I am of opinion that the judgment should be reversed, and a new trial granted, with cost to the appellant, to abide the event.

JONES, J., concurred in reversing the judgment, on the first grond stated, *i. e.* that the evidence did not show the relation of master and servant between the defendant and the driver.