SAMUEL B. RICHARDSON, RESPONDENT, *v.* EDWARD VAN NESS, APPELLANT, IMPLEADED WITH DAVID LYONS.

*Master and servant — when the relation does not exist between a passenger and the driver of a carriage of a transportation company.*

A passenger, who had left New York for an excursion to the Adirondacks, met upon the railroad train an agent of a transportation company which carried passengers by stage from North Creek, a station upon the railroad, to Blue Mountain lake, and engaged a buck-board carriage to carry himself and his wife between those points. After entering upon the journey with the buck-board carriage the passenger, being annoyed by the dust which was created by teams in advance of his own, asked Mr. Lyons (the driver) if he would have to keep behind them and take their dust all day, and he said "No, there is a place just beyond here where I can pass." The passenger then said, "That is all right; you will do so then."

When they came to a fork in the road the driver pulled his horses to the left and urged them forward to a sharp trot. One Richardson, the driver of the carriage in front, struck his horses and started them into a run, and both teams continued running until the roads came together, when the carriage drawing the passenger came so near to the horses drawing the other carriage as to strike them with the hind wheel. The horses thereupon ran away and overturned the wagon, injuring Richardson.

In an action brought by Richardson against the passenger to recover for such injuries:

*Held*, that no recovery could be had against him.

APPEAL by the defendant from a judgment rendered upon a trial at the Saratoga County Circuit, before the court and a jury, upon a verdict in favor of the plaintiff for $1,000, which judgment was entered in the office of the clerk of the county of Saratoga on the 15th day of October, 1888.

The action was for injuries suffered by the plaintiff in a collision on the highway between a carriage and horses driven by the plaintiff

Richardson, and a carriage and horses driven by the defendant Lyons, in which latter carriage the defendant Van Ness and his wife were passengers. The plaintiff's horses ran away, overturned the carriage and injured the plaintiff.

*C. S. Lester*, for the appellant.

*E. T. Brackett*, for the respondent.

INGALLS, J. :

This action was brought by the plaintiff to recover damages for an injury which the plaintiff received as the result of a collision in a public highway, between a carriage and horses driven by the plaintiff and a carriage and horses driven by the defendant Lyons, which collision and injury the plaintiff claims was produced by the negligent conduct of Lyons in the management of the team which he drove, and to which the defendant Van Ness contributed by directing Lyons to pursue the course which he did, and thereby became also liable to the plaintiff. The defendant Van Ness, accompanied by his wife, started from the city of New York upon an excursion to the Adirondacks, and when upon the cars between Saratoga Springs and North Creek, R. B. Scarrett, who was at the time an agent of the Blue Mountain Lake Stage Transportation Company, came into the car where Van Ness was sitting, and the latter applied to such agent for transportation from North Creek to Blue Mountain Lake for himself and wife, and Scarrett undertook to furnish a suitable conveyance, charging therefor eleven dollars, which Van Ness paid, and Scarrett delivered to him a ticket, as follows :

"Blue Mountain Lake Stage and Transportation Company. No. 212. North Creek, August 3, 1888. Special ticket. The bearer, Mr. VanNess, has engaged two seats in patent covered buck-board carriages, through to Blue Mountain Lake, party of two. Number and value of ticket exchanged. Price $11. Cash $11. Buck-board No. —.

"R. B. SCARRETT.

"*Agent.*"

Scarrett testified at the trial as follows : " The defendant at that time paid me eleven dollars and I gave him his ticket. In pursu-

ance of that ticket and agreement, I hired a buck-board for the purpose of fulfilling that contract to transport defendant; I hired Mr. Lyons' carriage." When the cars reached North Creek the defendant Van Ness and his wife were conducted by Scarrett to such carriage, and Lyons took the driver's seat and drove the team. After they had proceeded about two miles, Mr. Van Ness being disturbed by the dust which was raised by the teams in advance of theirs, addressed Lyons, as appears by his evidence, as follows: "I asked Mr. Lyons if we would have to keep behind them and take their dust all day, and he said no; there is a place just beyond here where I can pass; I said that is all right; you will do so then; I had no other conversation with him on that subject; when we got to the forks of the road he got behind the rear coach as close as he could, and when he came to the place where the road forked he pulled his horses to the left and urged them forward to a sharp trot, and there were two carriages on the right that Lyons turned out to pass; they were about twenty-five feet apart, as near as I can judge; the first carriage was driven by the plaintiff; he struck his horses and started them up into a run, and Lyons urged his horses into a run, and both continued running until the roads came together; Lyons got to the point of intersection first, and plaintiff run his horses so that his near horse struck the off hind wheel of Lyons' carriage; I was sitting on the off side of the back seat, and I could have put my hand over the side of the carriage and touched the harness of the near horse; I don't know what further occurred to the plaintiff or his carriage."

The plaintiff denies striking his team, but from all the circumstances we are inclined to think that he did, and that he entered actively into the race for the purpose of keeping the lead. Except the remark of Van Ness, given above, we fail to discover a word or act on his part which would justify an inference that he desired Lyons to pass the plaintiff's team in an improper manner, and we think what he did say, fairly construed, does not justify any such inference. In the conversation with Mr. French we fail to perceive that Van Ness made any admission which materially changes his version of the transaction. It appears that Van Ness was unacquainted with the road, and knew nothing of any opportunity which would be offered for passing the other teams, and must have

depended entirely upon Lyons, who was familiar with the route, and, as we have seen from the evidence, it was Lyons who first made the remark "There is a place beyond here where I can pass," to which Van Ness replied, "That is all right, you will do so then." There was nothing objectionable in that remark of Van Ness. He did not assume to control the conduct of Lyons, but left him to perform the duty according to his own judgment and discretion, being conscious that he knew the route, and was familiar with the duty which he had undertaken to perform. The conduct of Van Ness, as disclosed by the evidence, does not seem extraordinary or unreasonable. He had expressed to the agent, Scarrett, the desire to be transported as expeditiously as he reasonably could be on account of his wife, who, he said, was timid and averse to pursuing the journey after dark. For such purpose he had paid the agent an extra price for a conveyance in which himself and wife would be the only passengers. It may be inferred that, with so light a load, if Lyons had been allowed to pass the other teams, which were all much more heavily loaded, that the other passengers would not have been disturbed by the dust produced by the conveyance managed by Lyons, as it would probably have soon been out of the way of the other teams. Lyons took the side road, and, but for the determination of the plaintiff to prevent his team from passing the one which he drove, no trouble would have arisen, as it appears that the other teams did not enter the race, but allowed Lyons to drive by. Lyons was the agent of the transportation company, and was in no sense to be regarded the agent or servant of Van Ness, and such was the view taken by the learned justice at the trial, as appears from his charge upon that question, in which he remarked to the jury as follows: "I am of opinion in this case that Lyons was not the servant of Mr. Van Ness. He was the servant of the transportation company, or at least employed by the transportation company, and in fact represented it. The defendant, Van Ness, employed the transportation company to send him from the station there to Blue Mountain lake." Such direction was clearly authorized by the facts of the case and the law applicable thereto. (Story on Agency [4th ed.], § 453*a*, and cases there cited). We fail to discover in the case anything which would justify the conclusion that the defendant, Van Ness, directed, advised or assisted in the

perpetration of any wrong on that occasion. The learned justice further remarked : " It is proper for me to say that the act of the defendant in asking the driver to pass by was perfectly legitimate and proper. Certainly no wrong in that." We fail to discover from the evidence what more Van Ness did or said upon that occasion which would justify even an inference that he committed or even intended to countenance any wrongful conduct on the part of Lyons. He did not assume to control Lyons, but allowed him to manage his team as he thought proper, doubtless assuming that Lyons was familiar with the route and the custom observed by drivers in the management of their teams in the transportation of passengers. The plaintiff and Lyons were both the servants of the transportation company, as Van Ness knew ; and he certainly had no reason to suppose that either would be likely to do an act which would prejudice the company or the passengers who were being transported by such company. All that Van Ness seems to have done, after the remark which he made in reply to the declaration of Lyons, was merely to sit still in the carriage without uttering a word, so far as the case discloses, until the collision occurred, and was not aware that any injury had been done until some little time thereafter. From all the facts and circumstances of the case, we are convinced that no cause of action was established against Van Ness, and that the verdict was unauthorized. The complaint should have been dismissed as to such defendant, as requested by his counsel.

The judgment must, therefore, be reversed and a new trial ordered, with costs to abide the event of the action.

LEARNED, P. J., concurred ; LANDON, J., not voting.

Judgment reversed, new trial granted, costs to abide event.