(8 Misc. Rep. 433.)

HIGGINS v. WESTERN UNION TEL. CO.

(Superior Court of New York City, General Term. May 7, 1894.)

MASTER AND SERVANT—WHEN RELATION EXISTS.

Where the owner of a building, at the request of the contractor who was at work thereon, furnished a man to run the elevator for the use of the contractor, the elevator man is still the servant of the owner, and he is

therefore liable for injuries to a servant of the contractor caused by the negligence of the elevator man.

Action by Peter Higgins against the Western Union Telegraph Company for personal injuries. The verdict was directed in favor of defendant, and plaintiff moves for a new trial on exceptions ordered to be heard in the first instance at general term. Granted.

Argued before SEDGWICK, C. J., and McADAM, J.

Truax & Crandall, for plaintiff.

J. F. Miller, for defendant.

McADAM, J.    The plaintiff was in the employ of James B. Smith, who contracted with the defendant to restore the upper portion of its building at No. 195 Broadway, this city, which had been destroyed by fire. Smith did the carpenter, mason, and plumbing work on the upper stories, employing the workmen and furnishing the materials. He also put in the elevators, which had been contracted for the building by the Crane Elevator Company. The plaintiff, an employe of Smith, was pointing up the elevator shaft when the accident occurred. He was standing on the top of the elevator, using it as a scaffold. While doing work, Smith frequently called on the defendant to furnish a man to run the elevator, and the defendant generally furnished one on application. On the occasion in question, the foreman of Mr. Smith called upon the defendant, and Mr. Clark, its chief engineer, delegated one Algar as conductor, to take charge of the elevator, and move it up or down, as the work progressed. It required skill to run the elevator, and the defendant presumably selected Algar on account of his supposed competency. No one interfered with his management of the elevator, though he was subject to the orders of Smith and the plaintiff as to when he should raise or lower the machine; but in no other regard was he controlled by them. It certainly cannot be truly said that a passenger directing an elevator conductor to stop at a particular floor or part of a building assumes any control over the elevator, or in any manner or to any extent makes the conductor his servant; and this, in substance, may be likened to the directions given by the plaintiff. They were of that tenor, and no other. To hold the elevator steady it was necessary to bring the lever to the center, and put it in the catch. To move the elevator up or down, the lever was moved one way or the other, according to the direction which the elevator was required to go. The conductor did not on this occasion put the lever in the catch. He was sitting in his chair, reading a newspaper, and had not his hand upon the lever. The elevator naturally started up. Plaintiff fell over, with his head under the door, receiving the serious injuries complained of; and the action is brought to recover compensation for the wrong.

The defendant had nothing to do with the work which plaintiff was engaged upon, further than being interested in its speedy completion. Nor was the defendant under any contractual obligation to furnish a person to manage or run the elevator; yet it chose (as

it lawfully might) to do so. The theory upon which the learned judge below directed a verdict in favor of the defendant was that Algar, at the time the plaintiff was injured, was not acting as the servant of the defendant, either in its business or under its direction or control, but was the servant of Smith, the contractor. If this be the only deduction to be drawn from the facts, the direction was certainly right as one of law. Do the facts necessarily lead to the conclusion stated? In passing, it may be said that the special rule relating to independent contractors has no application to the case, as developed by the evidence, which requires the ground of liability to be placed upon a different principle. It may be assumed that the only theory upon which the defendant can be held answerable for Algar's negligence is on the principle of respondeat superior; and, in order to make that applicable, it must affirmatively appear that he was at the time acting as its servant, doing its business, subject to its orders and directions. The relation of master and servant exists where one is bound to render the service, and the other to pay the stipulated consideration. Did Algar, at the time, bear this relation to the defendant? or was he pro hac vice the servant of Smith, the contractor? The questions put must be subjected to the tests by which such relation is determined.

First. It has been judicially said that "he who had selected him as his servant, from the knowledge of, or belief in, his skill and care, and who could remove him for misconduct, and whose orders he was bound to receive and obey, stood in the relation of master to the person doing the act complained of." Quarman v. Burnett, 6 Mees. & W. 500; Blake v. Ferris, 5 N. Y. 48; Michael v. Stanton, 3 Hun, 462; Gerlach v. Edelmeyer, 47 N. Y. Super. Ct. 292, affirmed 88 N. Y. 645; Annett v. Foster, 1 Daly, at page 507; Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017; Broom, Leg. Max. 669; Story, Ag. § 453b.

Second. Another inquiry is whether at the time the person who did the wrong was in charge of the defendant's property by its assent and authority, and whether the injury was done while rendering obedience to his employer's will. Cosgrove v. Ogden, 49 N. Y. 255.

Third. The master has a general authority and personal control over the one who stands to him in the relation of servant. In fact, he has a property in the service of those whom he thus employs, acquired by the contract of hiring. The master may maintain an action for loss of service against one who wrongfully imprisons the person employed by him (Woodward v. Washburn, 3 Denio, 369; Lawyer v. Fritcher, 130 N. Y. 239, 29 N. E. 267), or who wrongfully entices the servant away (Wood, Mast. & S. §§ 230, 239). If Algar had been imprisoned or enticed while in charge of the elevator, the right of action for the wrong would in either case have belonged to the defendant, and not to Smith. Tested in this manner, it would seem reasonably clear that Algar was at the time the servant of the defendant, and that it was his master, and not Smith. Smith did not employ him or pay him. He had no power to con-

trol him or discharge him; was not answerable for his skill as an elevator conductor, nor responsible for his incompetency, because he did not select him, and, for all that appears, never saw him. If the defendant had contracted the services of Algar as an elevator conductor to Smith for a compensation, it would have been liable for his competency, and the proper discharge of his duties; and it can make no substantial difference in this case that his aid was given by the defendant gratuitously. It has been held that if A., a livery stable keeper, furnishes a horse and driver to B., a cus-- tomer, to be used in driving B. about in his own carriage, the driver, while so employed, will be deemed the servant of A., and not of B. (Sammoll v. Wright, 5 Esp. 263), and it makes no difference that the arrangement is a continuing one; that the same driver is always sent; that he wears a livery furnished by B., designed to make the public believe he is B.'s coachman; and that he receives gratuities from B. (Quarman v. Burnett, 6 Mees. & W. 499); the person selecting, retaining, and dominating the conduct of the serv- ant being, as a rule, regarded in law the real, true, and respon- sible master, as to third persons injured by the servant's miscon- duct. It is seldom, if ever, otherwise. A. hired a team, wagon, and teamster of B. While used in A.'s business, the harness being out of order, it ran against C.'s horse and killed it. C. sued B. for damages. Held, that the teamster was the servant of B., the bailor, and not of the bailee, and that B. was answerable. Crockett v. Calvert, 8 Ind. 127; Quinn v. Construction Co., 46 Fed. 506. The same rule would apply to a man who hires a carriage and horses to travel on a journey. The carriage and horses are em- ployed for the benefit or pleasure of the traveler, and yet the law has never considered the traveler liable, but the owner only, for the negligence of the driver. Story, Ag. § 453a; Richardson v. Van Ness, 53 Hun, 267, 6 N. Y. Supp. 618. In Jones v. Mayor, etc., 14 Q. B. Div. 890, one Dean had contracted with the defendants to furnish a horse and driver to draw a watering cart belonging to the defendants, under the supervision of inspectors employed by defendants, whose duty it was to direct the drivers of the water- ing carts when and where to water the streets. As their order was necessary for this purpose, the inspectors had authority and control over the drivers of the carts. The plaintiff's carriage was injured through the negligence of the driver furnished by Dean. Held, that the plaintiff could not recover of the defendants. In Weyant v. Railroad Co., 3 Duer, 360, it appeared that the plaintiff had been thrown out of his wagon by a collision with a railroad car, the property of the New York & New Haven Railroad Com- pany, but which was drawn by horses owned by the New York & Harlem Railroad Company, and was driven by a driver in their employ. The court held that, as "the Harlem Railroad Company was the owner of the horses which drew the car, and the driver was in their employ, paid by them, bound to receive and obey their orders, and liable to be dismissed by them at pleasure," that com- pany was liable. See, also, Schular v. Railroad Co., 38 Barb. 653; Boniface v. Relyea, 5 Abb. Pr. (N. S.) 259, 6 Rob. (N. Y.) 397, 36 How.

Pr. 457. In Pack v. Mayor, etc., 8 N. Y. 222, the contractor engaged to conform his work to such further directions as might be given by the defendants. The court held that this clause did not change the relations of the parties. It gave the corporation power to direct as to the results of the work, but without control over the contractor or his workmen as to the manner of performing it, which control alone furnishes ground for holding the master liable for the acts of the servant or agent. In Holmes v. Onion, 2 C. B. (N. S.) 790, 26 Law J. C. P. 261, the defendant engaged the services of S., a thatcher, for a certain period, at weekly wages, for the purpose of hiring him out to do thatching work for his profit. S. having during the period thatched some stalks of wheat for the plaintiff, for which work the defendant claimed and received payment, held, that the defendant was responsible to the plaintiff for the injury to the wheat, occasioned by the negligent manner in which S. did the work. A case calling for the exposition of the general principles applicable is that of Sproul v. Hemmingway, 14 Pick. 1, in which it appeared that a brig, which was towed at the stern of a steamboat, employed in the business of towing vessels in the river Mississippi below New Orleans, was, through the negligence of the master and crew of the steamboat, over whom those in charge of the brig had no control, brought into collision with a schooner lying at anchor in the river. A suit was brought by the owners of the schooner against the owners of the brig for the damages sustained by the collision, and the question was whether the owners of the brig were liable therefor. It was held that they were not, upon the ground that the master and crew of the steamboat were not the servants of the owner of the brig, were not appointed by him, did not receive their wages or salaries from him, had no power to order or control them in their movements, and had no contract with the master or owner of the steamboat, but only, through the master, with the owners of the steamboat for a participation in the power of the steamboat, derived from the public use and employment thereof by the owners. See, also, Fenton v. Packet Co., 8 Adol. & E. 835; Dalyell v. Tyrer, 28 Law J. Q. B. 52. It was said that the case most nearly resembling the one cited is that of a vessel chartered, where, for the time being, the whole use and benefit of the ship is transferred to the charterers, but the officers are appointed, and the crew engaged and subsisted, by the owners; in which case it was held that the owners, and not the charterers, are responsible to third persons for any damage occasioned by the negligence of the officers and crew. Fletcher v. Braddick, 2 Bos. & P. (N. S.) 182.

So through the books will be found reiterated, as the doctrine on which the liability is bottomed, that the person selecting the servant, and reposing confidence by putting him in command of his vessel, carriage, or elevator, is answerable to third persons for all injuries received by them through the carelessness of the agent appointed. It rests also on the power which the master has a right to exercise, and which, for the protection of third persons, he is bound to exercise, over the acts of subordinates who stand in his

place, representing him in the performance of duties which he has undertaken shall be exercised with care commensurate with the danger. The plaintiff could not work in the well hole while Algar was engaged carrying passengers for the defendant; and when that traffic ceased on this particular elevator for the day the defendant directed Algar to use it to aid the plaintiff in his work,—an undertaking the defendant was interested in having completed as speedily as possible. In furnishing Algar, the defendant did not sever its relation with him, for he was directed to go by force of the authority it conferred. It did not transfer him to a new master, who was thereafter to direct him in the manner of running the machine, so as to divest it of liability for its mismanagement. It parted with no control over him. He was merely to assist the plaintiff up and down, as the exigencies of the work required; and while in control, managing the machine, Algar represented the defendant, his employer and master, whom he was serving, and no one else. If Smith had for his own purpose borrowed the use of the elevator, and had run it with a conductor of his own selection, a different question would have been presented (Herlihy v. Smith, 116 Mass. 265); and so, if Algar had, for Smith's accommodation, and without the direction of the defendant, or contrary to its instructions, operated the machine. Sheridan v. Charlick, 4 Daly, 338; Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381. But neither of these contingencies arose. Indeed, Algar was in the act of carrying out his master's orders when the accident occurred; not only within the scope of his employment, but in the specific performance of it.

The application of the rule respondeat superior in this as in other cases becomes simple enough after it has once been determined whose servant did the damage. The injuries received by the plaintiff were the sole result of mismanaging the elevator by omitting to put the lever in the catch,—a clear act of negligent omission of the servant, not caused or aided by anything Smith or the plaintiff said or did or omitted to say or do; and it is impossible, therefore, to impute to either of them the doing or omitting to do anything relating to or connected with the cause of the accident. Algar was in command of the elevator, running it as a captain or a pilot runs a boat, and, like persons thus situated, was not expected to take instructions as to safety, management, or control from Smith or any one else. He was placed in command by the orders of the defendant, and it was at liberty to recall him at pleasure, if it felt any insecurity from his control. Smith could not have compelled him to remain if the defendant had seen fit to call him away. The plaintiff had the right to rely upon Algar's competency, for he knew that a responsible corporation had selected him, presumably with care commensurate with the danger; and by such employment it set in motion that which lulled others into a sense of security, and produced the very injury sought to be redressed, and defendant took upon itself the risk of all the consequences which followed the wrongful execution of the conductor's duties. It is elementary that if a servant, within the scope of the confidence reposed in him, does any damage to a stranger, the master must,

agreeably to the maxim, "Qui facit per alium, facit per se," answer for this neglect. City of Buffalo v. Holloway, 7 N. Y., at page 496. Algar had run the same elevator on the very day the plaintiff was injured, and also on previous days, carrying passengers for the defendant to different parts of the building; which shows, by inference at least, that the elevator was in the defendant's possession and control. To sustain the present judgment would be, in effect, to hold as matter of law that Algar at the time of the accident was the servant of Smith, the contractor, and that the plaintiff must seek his remedy from him. There can be but one responsible superior for the same subordinate at the same time. Blake v. Ferris, and Michael v. Stanton, supra. If different inferences are to be drawn from the facts, that leave in doubt the question as to whether Algar was an employe of the defendant or of Smith at the time, then the trial judge should have submitted it to the jury for their determination. This the plaintiff's attorney requested the trial judge to do, but the request was denied. We do not say that question ought to have been sent to the jury, for we are of opinion that the facts stated sufficiently establish as matter of law that the relation of master and servant existed between Algar and the defendant at the time, and that the responsibility for his acts rested upon it. This being so, it was error to direct a verdict in favor of the defendant.

The case is unaffected by the doctrine applicable to negligence by a fellow workman, for there was no common employment; the plaintiff being engaged in a separate service by a different master. Svenson v. Steamship Co., 33 N. Y. Super. Ct. 277, affirmed 57 N. Y. 108; Abraham v. Reynolds, 5 Hurl. & N. 143; Story, Ag. §§ 453–459. No privity between the plaintiff and defendant was necessary in order to enable him to maintain the action. In Coughtry v. Woolen Co., 56 N. Y. 124, it appeared that O. & M. contracted with defendant to put a cornice on its mill, any scaffolding required for that purpose to be erected free of cost to them. Plaintiff's intestate, a workman in the employ of O. & M., while engaged in the work, was killed by the fall of a scaffold erected by defendant, and on which he was at work. In an action to recover damages plaintiff was nonsuited, on the ground that the defendant owed no duty to the deceased, as he was not in its employ. Held, error, and a new trial was awarded. The court said:

"Being conceded to be its own structure, furnished by it for use, the duty of due diligence arose, not merely out of the contract to furnish it, but from the fact that the defendant did actually furnish it for the express purpose of enabling and inducing the men who were to do the work to go upon it."

The principles decided in the case cited are peculiarly applicable here.

The question whether there had been a formal acceptance of the elevator by the defendant from the Crane Elevator Company is of no consequence, for that must depend upon the terms of the contract under which it was furnished. As to third persons, however, the defendant became liable for its "management" from the time it assumed control and applied it to the uses and purposes for which

it was constructed, there being no allegation or proof of defect in construction.  For these reasons the exceptions must be sustained, and the plaintiff's motion for a new trial granted, with costs to the plaintiff to abide the event.