PETER HIGGINS, Respondent, *v.* THE WESTERN UNION TELEGRAPH CO., Appellant.

(New York Superior Court, General Term, January, 1895.)

At the request of a contractor who was engaged in repairing the elevator shaft in its building, the defendant directed its servant who operated the elevator to run it so as to enable the plaintiff, who was a servant of the contractor, to perform his work by standing thereon. The elevator was raised or lowered as the plaintiff requested, but the elevator man took no directions from the contractor and continued to be paid by the defendant. In an action to recover for injuries sustained by plaintiff alleged to have been caused by the negligence of such servant in running the elevator, *held*, that such elevator man was the servant of the defendant at the time of the injury and that the defendant was responsible for his negligence on the theory of *respondeat superior*.

APPEAL by defendant from judgment rendered on verdict in favor of plaintiff, and from order denying motion for a new trial.

*Jacob F. Miller*, for appellant.

*Chauncey S. Truax*, for respondent.

McADAM, J.   When the record of the former trial was before us we decided as matter of law, from the facts disclosed, that Algar was the servant of the defendant at the time of the injury complained of, and that the defendant was responsible for his negligence on the theory of *respondeat superior*.   See report of case, 8 Misc. Rep. 433 ; 58 N. Y. St. Repr. 852 ; 28 N. Y. Supp. 676.   Following that ruling the trial judge at the second trial charged the jury, in the nature of a binding instruction, that the defendant was Algar's master at the time of the accident, and as such responsible for any negligence on his part, and the exception thereto is the main point urged on this appeal.

Without re-examining the question we will assume that the case upon the preceding appeal was properly decided, and accept the result as the law applicable so far as this court is concerned.   The question determined is a close one, near the border line, and about which judicial minds might differ.   We fail to discover in the present record that the facts have been substantially changed since the former trial, and, therefore, deem it our duty to adhere to our ruling.

The facts being conceded, it became a question of law whether Algar at the time of the accident was acting as the employee of the defendant or of Smith, the independent contractor, and there was nothing to submit to the jury on that subject.   We are aware of the exceptional rule, that if a servant step aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended, and an act performed during such interval is his own (14 Am. & Eng. Ency. of Law, 745 ; *Sheridan* v. *Charlick*, 4 Daly, 338 ; *Courtney* v. *Baker*, 37 N. Y. Super. Ct. 249) ; also of the rule that, " when one person lends his servant to another for a particular employment, the servant for anything done in that particular employment must be dealt with as the servant

New York Superior Court, January, 1895.        [Vol. 11.

of the man to whom he is lent, although he remains the general servant of the person who lent him." Addison Torts (6th Am. ed. by Baylies), 127. This law was applied in *Rourke* v. *White Moss Colliery Co.*, L. R. (2 C. P. Div.) 205, and in *Murray* v. *Currie*, 6 id. 26, which cases are relied upon by the appellant and claimed by it to be applicable here. In the *Rourke* case the servant was lent to an independent contractor to do his work under his instructions, *and the services were paid for by such contractor*. In the *Murray* case the servant was lent to an independent contractor, under whose immediate supervision and orders he was working at the time of the accident. In those cases the independent contractor was clearly liable for the acts of the servant, for the latter, being under his immediate control and direction, became his servant *pro hac vice*, and the acts of the servant were, therefore, regarded in law as those of the independent contractor.

In the controversy before us there was no such lending of Algar, the servant, and no substitution of authority. He was not paid or controlled by Smith, the independent contractor, and took no directions from him as to the manner of running the elevator. Indeed, the evidence fails to show that Smith ever saw Algar or ever assumed to control or direct him. In short, Algar's employment by the defendant was never suspended, and Smith never assumed any responsibility for his conduct, and did not become liable therefor.

There being no suspension of the relation which existed between the servant and the defendant as his master it continued in force, and there was no severance for any time, however short, of such relation. If we are right in this the trial judge was correct in charging that the case was unaffected by the doctrine applicable to negligence by a fellow-workman, for there was no common employment. This proposition is a natural sequence of the other.

The defendant owned the elevator, and it was run for its benefit. The servant in charge was chosen by it for that express purpose. Smith, the independent contractor, had no contract to run the elevator; was under no obligation to run

it, and, although the defendant permitted its use to aid the plaintiff in doing Smith's work, it was to speed its completion. Defendant retained possession of the elevator, however, through its own chosen servant, whose duty it was to run it, and to run it safely.

The recent case of *White* v. *Norfolk & S. R. Co.*, 20 S. E. Rep. 191, holds that a corporation chartered as a common carrier, with power to use steamboats as well as trains, is liable as a carrier to a passenger on one of its boats, though the boat is at the time let for an excursion, where it also lets the crew, *which is still in its pay and subject to be discharged or changed by it.* There the court said the test was whether the defendant abandoned the entire control of its servants to the hirer. In an elementary work of authority the authors lay it down as a settled principle that "unless the master abandons the entire control of his servants to the hirer, he remains liable to strangers for their negligence. The hirer cannot properly be said to have control of the servants unless he has the right to discharge them and employ others in their places in case of their misconduct or incapacity, that being the only practicable means by which free servants can be controlled. If, therefore, the hirer has no such power, he is not responsible to any one for the faults of the servants." Shearm. & Redf. Neg. (4th ed.) § 162. These principles may apply to the facts in *Murray* v. *Currie* and *Rourke* v. *White Moss Colliery Co., supra,* where the hirer or independent contractor was held liable instead of the supreme master, whose position was for the time being obliterated; but they cannot be extended to this case, because the proof is dissimilar. Algar continued in the pay of the defendant, could be discharged only by it, and its control over him was never abandoned.

Many of the propositions which the defendant's counsel requested the trial judge to charge were accurate considered in the abstract; but, in view of the conclusion reached by the preceding General Term, that Algar was, on the undisputed facts, the servant of the defendant, and that there was no common employment, they were inapplicable. The real ques-

tions for the jury, apart from the matter of damages, were whether Algar was negligent, whether the plaintiff's injuries resulted from such negligence, and whether the plaintiff was entirely free from fault. These features of the case were clearly sent to the jury, and were decided adversely to the defendant upon evidence satisfactorily sustaining the findings. The damages awarded are moderate in amount, and, therefore, unobjectionable.

It follows, therefore, that the judgment and order appealed from must be affirmed, with costs.

FREEDMAN, J. The views expressed and enforced by me upon the first trial of this case concerning the relations existing at the time of the accident between the defendant and Algar and Smith having been overruled by the General Term of this court, it is my duty to accept that decision as the law applicable to this case upon the present appeal. That being so, and being unable to discover in the present record any substantial change in the facts since the former trial, I feel bound to concur, and for that reason alone I do concur in the affirmance of the judgment and order appealed from, with costs.

Judgment and order affirmed, with costs.