## JAMES SHERIDAN *v.* OLIVER CHARLICK.

A coachman, after having used his master's horse and carriage in going upon an errand for his master, instead of taking it to the stable, used it in going upon an errand of his own, without his master's knowledge or consent. While doing so, he negligently ran into and injured the plaintiff's horse. *Held*, that his master was not liable.

If a negligent act be done by a servant while he is at liberty from service and pursuing his own ends exclusively, the master is not liable for the injury produced thereby, even if it could not have been committed without facilities afforded to the servant by his relations to his master.

The case of *Mitchell* v. *Crassweller*, 13 C. B. 237, approved and followed.

APPEAL by defendant from a judgment of the general term of the Marine Court, affirming a judgment entered on the verdict of a jury.

The facts are stated in the opinion.

*A. J. Vanderpoel*, for appellant.

The defendant was not liable, and the nonsuit should have been granted.

Schouler's Domestic Relations, p. 639, states the rule of law applicable to the facts.

Some cases might lead to the belief that a master is liable for the careless driving of his servant, because he entrusts him with the carriage. This is not correct. The true principle is, that while a master is liable when the servant is in the line of his employment at the time of committing an injury, though he may go out of his way and do his work in an improper and roundabout manner, yet this liability does not extend further. Take, for example, a late case where the master sent his carman and clerk to deliver some wine and bring back some empty bottles, and on their return, when about a quarter of a mile from the office, the carman, instead of doing as he was bidden, and putting up the horses, was induced by the clerk to drive in quite another direction on business of the clerk's,

and thus injured a person in the street; the master was held not to be liable (*Sleath* v. *Wilson*, 9 Car. & P. 607; *Storey* v. *Ashton*, 4 Law. Rep. 2, B. 476; see *Mitchell* v. *Crasweller*, 13 C. B. 237; 16 E. L. & Eq. 448; *Whatman* v. *Pearson*, Law Rep. 3 C. P. 422; *Limpus* v. *London, &c. Co.* 1 Hurl. & Colt. 526; *Patten* v. *Rea*, 2 C. B. (N. S.) 606, 40 E. L. & Eq. 329; *Bard* v. *Yohn*, 26 Penn. State, 482; *Crockett* v. *Calvert*, 8 Ind. 127; *Wright* v. *Wilcox*, 19 Wend. 343.

*J. S. Bryan*, for respondent.

By the Court.*—J. F. Daly, J.—The plaintiff in the court below obtained a verdict for $250 damages, for the negligent driving of defendant's horse and carriage by defendant's servant, by which a horse belonging to plaintiff was killed. The accident occurred on the evening of March 29th, 1871, at the corner of 7th avenue and 27th street. The plaintiff drove up 7th avenue, and when he arrived at 27th street went across the west railroad track to go down 27th street, where he stabled, but when his horses reached the cross-walk, the defendant's coachman, driving defendant's horse before defendant's wagon, came very rapidly down 7th avenue, and a collision occurred, the shaft of the wagon ran into plaintiff's horse, who subsequently died of the wound. The evidence establishes a strong case of negligence on the part of defendant's coachman, and the only question in the case is, whether defendant can be held liable for the act. The testimony of the coachman, which is entirely undisputed, shows that when the collision occurred he was not driving the horse on his master's business, but on an errand of his own. He says, " I was directed towards the latter part of that afternoon, by Mr. Charlick, to take his horse and wagon and go on a message to Hunter's Point R. R. depot, to get a map for him and some other papers. I took his horse and wagon and went out of the stables on 33d street around into 34th street, and so down in a direct line to 34th street ferry to Hunter's Point. This was about twenty minutes past six o'clock. I got the maps and papers at

---

* Present, Van Brunt, Larremore, and J. F. Daly, JJ.

Hunter's Point, and came back immediately the same way, and got home and delivered the message to Mr. Charlick about half-past seven o'clock, p. m. He was in his room. He did not send me anywhere else that night. I afterwards took the mare and wagon, and went on an errand for myself down 7th avenue to 24th street. Q. "Had this anything to do with Mr. Charlick's business?" A. No, sir, nothing in the world." There is no contradiction of this in any part of the case. The coachman swears the mare needed exercise, but also swears that this trip down 7th avenue to 27th street was on an errand for himself, and there is nothing to show that it was taken to exercise the horse. The defendant stated to plaintiff, as plaintiff's witness, O'Gara, swears, that he, defendant, did not know the reason of the coachman going down to 27th street, and said he had no business there. There is no contradiction of all this by any witness. It therefore appears, that while the coachman was the servant of defendant, and was driving the defendant's horse and wagon, yet he was not, when the accident occurred, going to or returning from any place by defendant's order or on defendant's business, or in pursuance of his employment as coachman, but had fully performed all he was directed to by defendant, and, instead of taking the horse to the stable, was driving upon an errand of his own in an entirely different direction, without defendant's knowledge or consent. Upon these facts it seems to me that defendant is not liable (Sherman & Red. on Neg. § 63, and cases cited ; *Mitchell* v. *Crassweller*, 13 Com. B. 237). The text book here cited observes, that "if the act be done while the servant is at liberty from service, and pursuing his own ends exclusively, there can be no question of the master's freedom from liability, even if the injury could not have been committed without facilities afforded to the servant by his relations to his master." The case cited above was, that where a carman having finished the business of the day, returned to his employer's shop with the horse and cart, and obtained the key of the stable, which was close at hand, but instead of going there at once and putting up the horse, as it was his duty to do, he, without his master's knowledge or consent, drove a fellow workman to Euston Square,

and on his way back ran over and injured the plaintiff and his wife; and it was held (all the judges concurring) that, inasmuch as the carman was not at the time of the accident engaged in the business of his masters, they were not responsible for the consequences of his unauthorized act.

The judgment should be reversed.

Judgment reversed.

On a motion for a re-argument, or for leave to appeal to the Court of Appeals, the following opinion was delivered :

BY THE COURT.*—J. F. DALY, J.—There seems to be no reason for a re-argument of this appeal. The judgment below was reversed by us upon the authority of *Mitchell* v. *Crassweller*, 13 C. B. 237. That case was decided long after the cases of *Joel* v. *Morrisson*, 6 Carr. & P. 501, and *Sleath* v. *Wilson*, 9 Carr. & P. 601. In the latter case, a verdict was given for the plaintiff upon the charge of Erskine, J., that " where the master has intrusted the servant with the control of the carriage, it is no answer that the servant acted improperly in the management of it; the ground is that he has put it in his servant's power to mismanage the carriage by intrusting him with it; he was acting in the course of his employment until he had deposited the carriage in the Red Lion stable." In that case the facts were these : the coachman drove his master to Great Stamford street; his orders were to put up at the Red Lion stable in Castle street, Leicester square, and meet his master at the Olympic theatre ; he went, instead, into Old street road on business for himself. He was, therefore, actually sent to a certain place by his master and made a deviation from the road on his own affairs, all the time having the carriage out on his master's business. So in *Joel* v. *Morrisson*, the servant was going out of his way when driving on his master's business, and his master was made liable. But in *Mitchell* v. *Crassweller*, the carman was taking the horse to the stable " after the business of

* Present, DALY, Ch. J., LARREMORE, and J. F. DALY, JJ.

the day was done," and instead of going to the stable, took a fellow-workman home, and afterwards, on his way back to the stable, ran against the plaintiff. Maule, J., says, "At the time of the accident he was not going a roundabout way to the stable nor making a detour. He was not engaged in the business of his employers." Jervis, J., says, "If the master is liable where the servant has deviated, it must be where the deviation occurs in a journey on which the servant has originally started on his master's business." And the master in that case was held not liable. So in this case, the coachman of the defendant Charlick had duly performed his errand, had returned and delivered his message, and, having no further instructions, instead of taking the horse up to the stable, drove down Seventh avenue on an errand of his own, and while so going down, ran against the plaintiff's horse. I can only repeat the words of Williams, J., in the case of *Mitchell* v. *Crassweller*, " I should be extremely sorry if any authority could be found which would compel us to hold that this man was at the the time of the accident, which occurred through his breach of duty, acting in the employ of defendant."

The motion for a re-argument is denied, but as there does not seem to be any decision of our court of last resort, upon a question which has been very thoroughly discussed in England, I am in favor of permitting the plaintiff to appeal to the Court of Appeals.