(47 App. Div. 159.)

FISH v. COOLIDGE.

(Supreme Court, Appellate Division, Third Department. January 8, 1900.)

MASTER AND SERVANT—INJURIES TO THIRD PERSONS—MASTER'S LIABILITY—
TRIAL—NONSUIT.
　　Plaintiff was injured on Sunday, while attempting to cross a village street, by being struck by defendant's team, driven by his servant at a negligent and dangerous speed. The driver was employed to take care of the team, and to drive it when directed by defendant or his family, but at the time of the accident was using the team solely for his own pleasure; and defendant testified that the driver had no authority to exercise the horse on Sunday. Held, that there was not sufficient evidence to go to the jury on the question whether the driver was at the time of the accident acting within the scope of his employment.

Appeal from trial term, Warren county.

Action by Elizabeth M. Fish against Jonathan M. Coolidge. From a judgment on a nonsuit in favor of defendant, plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, and MERWIN, JJ.

Potter & Kellogg, for appellant.
S. & L. M. Brown, for respondent.

MERWIN, J. On Sunday afternoon, January 16, 1898, the plaintiff, while crossing a street in the village of Glens Falls, was run against and thrown down by a team, with sleigh or cutter, then being driven by one Thomas Fish. The defendant was the owner of the team and vehicle. This action was brought to recover damages for personal injuries sustained by the plaintiff upon that occasion. The claim of the plaintiff is that the defendant is responsible for the act of the driver, upon the theory that the driver was the servant of the defendant, and then employed in his business. It was held by the trial court, in granting the motion for a nonsuit at the close of the evidence, that the driver at the time was not engaged in the business of the defendant, and that therefore defendant was not liable.

The general rule is that the doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong, at the time and in respect to the very transaction out of which the injury rose. Wyllie v. Palmer, 137 N. Y. 248, 257, 33 N. E. 381, 19 L. R. A. 295, and cases cited. The fact of general employment and pay is said not to be enough.

Higgins v. Telegraph Co., 156 N. Y. 75, 79, 50 N. E. 500. In 1 Shear. & R. Neg. ·(5th Ed.) § 147, the rule is laid down as follows:

"In determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act is done while the servant is at liberty from service, and pursuing his own ends exclusively, there can be no question of the master's freedom from all responsibility, even though the injury complained of could not have been committed without the facilities afforded to the servant by his relation to his master."

This view is supported by many cases. Sheridan v. Charlick, 4 Daly, 338; Cavanagh v. Dinsmore, 12 Hun, 465; Bard v. Yohn, 26 Pa. St. 482; Joel v. Morison, 6 Car. & P. 501; Mitchell v. Crassweller, 13 C. B. 237. In the Sheridan Case it was held that when a coachman, after having used his master's horse and carriage in going upon an errand for his master, instead of taking it to the stable, used it in going upon an errand of his own, without his master's knowledge or consent, the master was not liable for the servant's negligence in running into the plaintiff's horse. In the Bard Case it was held:

"Where a person, employed by one as a servant, is using the team of his master for his own purposes and benefit, and in the absence of, and without any directions from, the master, uses the team so negligently as to occasion injury to a third party, the master is not liable for such injury, although he assented to the servant using the team for his own benefit."

In the Joel Case it was held as follows:

"If a servant, driving his master's cart on his master's business, makes a detour from the direct road for purposes of his own, his master will be answerable in damages for an injury occasioned by his careless driving while so out of his road. But if a servant takes his master's cart, without leave, at a time when it is not wanted for the purposes of business, and drives it about solely for his own purposes, the master will not be answerable for any injury he may do."

The same was held in the Mitchell Case.

In the present case upon the part of the plaintiff it was shown by a witness by the name of Lee, who lived in the village, that he had seen Thomas Fish drive the team before, several times; had seen the team go by his place of business frequently with the defendant riding in the carriage with Fish. It was also shown that a day or two after the accident the father of the plaintiff called on the defendant, told him he came to let him know what occurred about his team running over his daughter, and that the defendant replied, "I have just been informed by my driver at the foot of the stairs, which is the first I knew of it." It was shown that at the time of the accident there was riding with Fish another man,—not the defendant, but a stranger,—and that the team was racing. There was no other evidence on the part of the plaintiff as to the relation between the defendant and the driver, Fish, or as to how Fish came to be driving on that day. It did not appear that Fish had ever been seen driving defendant's team upon Sunday. The evidence upon the part of the plaintiff was not, we think, sufficient to authorize the jury to find that Fish, while racing upon Sunday in company with a stranger, was engaged in the business or service of the defendant, or was driving in the course of an employment by the defendant.

The further question arises whether the evidence given upon the part of the defendant strengthens the plaintiff's case. It was shown that Thomas Fish had been in the employ of the defendant for several years, taking care of the defendant's team, driving it when called upon to do so for the use of the defendant or some member of his family, and also did work about the house and grounds of the defendant. The defendant as well as the driver testified that upon the occasion in question the team was being driven without the consent or knowledge of the defendant, and for no object or purpose of the defendant, or in his business. The driver was, without leave, driving the team for his own pleasure. The defendant testifies that the driver, in case the team needed exercise, had the right to drive it for that purpose upon week days, but not upon Sunday. This does not help the plaintiff, as the jury would not have the right to find an authority to exercise the team upon Sunday, contrary to the testimony of defendant, and in the absence of any evidence to sustain such result. There was no proof that the team was a fast one, or accustomed to be speeded. The trial court did not, we think, err in holding upon the whole evidence that sufficient had not been shown to authorize the jury to find that the driver upon the particular occasion in question was engaged in the business of the defendant, or acting in the course of his employment. The judgment, therefore, must be affirmed.

Judgment affirmed, with costs. All concur.