## CUNNINGHAM v. CASTLE.

(Supreme Court, Appellate Division, First Department.   July 8, 1908.)

1. MASTER AND SERVANT—LIABILITIES FOR INJURIES TO THIRD PERSONS—ACTS OF SERVANT.

While a master is responsible for the negligence of his servant when engaged about the master's business and within the scope of his employment, he is not responsible for the negligence of his general servant, who at the time has become ad hoc the servant of another and engaged in the business of that other and under his directions and control; nor is the master responsible where the negligent act was committed by his general servant in course of. some private enterprise of his own, even if in the prosecution of such private enterprise the servant uses the instrumentalities of the master for his own purposes without the master's knowledge and consent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1223–1229.]

2. NEGLIGENCE—DANGEROUS MACHINERY AND OTHER INSTRUMENTALITIES—"AUTOMOBILE."

An "automobile" is an ordinary vehicle of pleasure and business, and is not necessarily a dangerous device, being no more dangerous per se than a team of horses and a carriage, or a gun, sailboat, or motor launch.

3. MASTER AND SERVANT—LIABILITIES FOR INJURIES TO THIRD PERSONS—ACTS OF SERVANT—AUTOMOBILE ACCIDENT.

Where a servant with his master's consent takes the latter's automobile, and while using it for purposes of his own negligently runs into and injures a person, the master is not liable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1220.]

4. SAME—QUESTIONS FOR JURY.

Where, in an action for injuries through being struck by an automobile owned by defendant and operated by his chauffeur, both defendant and the chauffeur testified that the latter had borrowed the machine and was using it for his own pleasure, the question whether the chauffeur was at the time of the accident acting within the scope of his employment, so as to render defendant liable for his negligence, should have been submitted to the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1275.]

Houghton and McLaughlin, JJ., dissenting.

Appeal from Trial Term.

Action by George Cunningham against Burton S. Castle. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

Theron G. Strong, for appellant.

Hansen, Zinsser & Power (Theodore Hansen, of counsel), for respondent.

CLARKE, J.  This is an appeal from a judgment for the plaintiff, entered upon the verdict of a jury, and from an order denying a new trial, in an action to recover damages for injuries under a complaint which alleges as follows:

"That at the time hereinafter mentioned the defendant owned and controlled an automobile, and operated or caused to be operated the same on the public highways in the city of New York; that on or about the 19th day of September, 1904, and while the plaintiff was lawfully on the highway, he was knocked down and run over by the defendant's automobile, which was operated by the defendant, his agent or servant."

There was sufficient evidence of want of contributory negligence on the part of plaintiff and of negligence on the part of the chauffeur to sustain the judgment. The question presented here arises out of the following evidence. The plaintiff called the defendant as a witness, who testified:

"I owned a Mercedes automobile and employed one Harry Boes as a chauffeur at that time. I had been out in the automobile the day before this occurred. After my return the automobile was left in the possession of Harry Boes, my chauffeur. At that time he asked me if I would loan him the machine to go uptown on some business for himself. I told him, 'Yes,' but to hurry back; only be gone a short while; come right back. That was all that took place between the chauffeur and myself as to loaning him the machine. It was about 11 o'clock at night that I returned to my apartment and loaned Harry Boes the machine."

Boes testified:

"I was Mr. Castle's chauffeur, and had been in his employment at the time of this accident, to the best of my knowledge, about 2½ or 3 months. On the night before this injury happened, which was Sunday night, previous to the time when I went out when the accident happened, I had been out with Mr. Castle. I left him at the Pierrepont Apartment in Thirty-Second street, right near Broadway. On leaving him I spoke to him about borrowing the machine, or as to letting me have the machine, for purposes of my own and my own pleasure. I said: 'Mr. Castle, may I use your car for an hour or two? I just want to take a run up to Harlem, and be back in an hour, or an hour and a half, or two hours.' Then he says: 'All right; be careful. If anything happens, be sure to notify me right away.' That was his consent. I took it out for purposes of my own entirely, for my own pleasure, and not in any business of Mr. Castle. It was about 10 minutes to 11 that I asked Mr. Castle for permission to take it out."

He then went to Shanley's, when he was joined by two women and a friend. He took them uptown, and was coming down Eighth avenue from 150th street, when he struck the plaintiff at Eighty-First street and Central Park West about half-past 1 in the morning.

The court charged:

"But I charge you that the fact that the machine was at the time in possession of and driven by the chauffeur with the owner's permission places upon the owner the same degree of liability for the chauffeur's negligence, if any, as would have been imposed upon him if the chauffeur were then engaged in the personal business of the defendant."

To this an exception was duly taken, and the defendant requested the court to charge:

"The mere fact that the person in charge of the automobile at the time of the accident was an employé of the defendant does not render the defendant liable for whatever he did. Unless he was engaged in the defendant's business at the time the accident occurred, the defendant is not liable for any injuries to the plaintiff resulting therefrom."

And also:

"If Boes, the chauffeur, had borrowed the automobile and at the time of the collision with the plaintiff was using it for his own pleasure, and not in the business of the defendant, the plaintiff is not entitled to a verdict."

And also:

"If the jury believe the testimony of Mr. Castle, the defendant, as to the circumstances and conditions under which the chauffeur was permitted to use the automobile on the night of September 18, 1904, the defendant is entitled to a verdict."

The court refused each and all of these requests, and the defendant duly excepted, so that the question of the defendant's responsibility for the negligence of the chauffeur is squarely presented. The general proposition as to the responsibility for a tort is stated by Andrews, J., in King v. N. Y. C. & H. R. R. R. Co., 66 N. Y. 181, 23 Am. Rep. 37, as follows:

"Where one person has sustained an injury from the negligence of another, he must, in general, proceed against him by whose negligence the injury was occasioned. If, however, the negligence which caused the injury was that of a servant while engaged in his master's business, the person sustaining the injury may disregard the immediate author of the mischief and hold the master responsible for the damages sustained."

In Wylie v. Palmer, 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285, it is said:

"The doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of such neglect or wrong at the time and in respect to the very transaction out of which the injury arose."

In that case a committee had arranged for a fireworks exhibition in the town of Auburn, and had bought from the defendant, a fireworks company, $400 worth of fireworks. A man and a boy had been sent by the company to set up and fire off the exhibit. The boy negligently discharged a rocket into the crowd, and the plaintiff was injured. Although concededly the general servant of the fireworks company, held, that the company was not liable, because at the time the boy was not engaged in the company's business, but in the committee's.

In Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537, the company owned a building in which were elevators. Defendant's general servant, Alger, ran the elevators. The building had been injured by fire, and the company had entered into a contract with a builder to restore the building. The elevator was used for the tenants of the building, but it was also used as a movable platform for the contractor engaged in doing plastering in the elevator shaft. By Alger's negligence the plaintiff, who was working at the plastering from the elevator as a scaffold, was injured. The court said:

"The general rule is that a party injured by the negligence of another must seek his remedy against the person who caused the injury and that said person alone is liable. The case of master and servant is an exception to the rule, and the negligence of the servant, while acting within the scope of his employment, is imputable to the master. Engle v. Eureka Club, 137

N. Y. 100, 32 N. E. 1052, 33 Am. St. Rep. 692. But the doctrine of responde-at superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of the wrong at the time and in respect to the very transaction out of which the injury arose. The fact that the party to whose wrongful or negligent act injuries may be traced was at the time in the general employment and pay of another person does not necessarily make the latter the master and responsible for his acts. The master is the person in whose business he is engaged at the time and who has the right to control and direct his conduct. Servants who are employed and paid by one person may nevertheless be ad hoc the servants of another in a particular transaction, and that, too, when their general employer is interested in the work. * * * This distinction in the law of master and servant is made quite clear by the decisions in this court. Beyond the scope of his employment the servant is as much a stranger to his master as any third person, and the act of the servant, not done in the execution of the services for which he was engaged, cannot be regarded as the act of his master; and, if the servant step aside from his master's business for however short a time to do an act not connected with such business, the relation of master and servant is for the time suspended, and an act of the servant during such interval is not to be attributed to the master. Here the relation of master and servant between the conductor of the elevator and the defendant was suspended during the time that he was doing the work of the contractor in moving the plaintiff up and down the shaft. I am unable to distinguish this case in principle from the cases in this court already cited, and the best-considered cases in other jurisdictions are to the same effect."

In Fish v. Coolidge, 47 App. Div. 159, 62 N. Y. Supp. 238, the plaintiff, while crossing a street, was run against and thrown down by a team being driven by one Fish. The defendant was the owner of the team and vehicle. The claim of the plaintiff was that the defendant was responsible for the acts of the driver, on the theory that the driver was the servant of the defendant and then employed in his business. It was held by the trial court, in granting the motion for the nonsuit, that the driver at the time was not engaged in the business of the defendant, and that therefore defendant was not liable. Merwin, J., cited Wylie v. Palmer and Higgins v. Western Union, supra, and Shearman & Redfield (5th Ed.) § 147:

"The rule is laid down as follows: 'In determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act is done while the servant is at liberty from his service and pursuing his own ends exclusively, there can be no question of the master's freedom from all responsibility, even though the injury complained of could not have been committed without the facilities afforded to the servant by his relation to his master.' "

The court then said:

"This view is sustained by many cases. Sheridan v. Charlick, 4 Daly, 338. It was held that when a coachman, after having used his master's horse and carriage in going upon an errand for his master, instead of taking it to the stable, used it in going upon an errand of his own without his master's knowledge or consent, the master was not liable for the servant's negligence in running into the plaintiff's horse. In Bard v. Yohn, 26 Pa. 482, it was held: 'Where a person employed by one as a servant is using the team of his master for his own purposes and benefit, and in the absence of and without any directions from his master, uses the team so negligently as to occasion injury to a third party, the master is not liable for such injury, although he assented to the servant using the team for his own benefit.' * * * In the present case it was shown that at the time of the

accident there was riding with Fish another man, not the defendant, but a stranger, and that the team was racing. There was no other evidence on the part of the plaintiff as to the relation between the defendant and the driver, Fish, or as to how Fish came to be driving on that day. * * * The defendant, as well as the driver, testified that upon the occasion in question the team was being driven without the consent or knowledge of the defendant, and for no object or purpose of the defendant, or in his business. The driver was without leave driving the team for his own pleasure. * * * The trial court did not, we think, err in holding upon the whole evidence that sufficient had not been shown to authorize the jury to find that the driver upon the particular occasion in question was engaged in the business of the defendant, or acting in the course of his employment. The judgment, therefore, must be affirmed."

In Stewart v. Baruch, 103 App. Div. 577, 93 N. Y. Supp. 161, Laughlin, J., said:

"The fact that the defendant was the owner of the automobile and the chauffeur was in his employ to operate it were sufficient to make out a prima facie case that the chauffeur was acting within the scope of his employment at the time; but this was far from conclusive, and, if the testimony of the chauffeur that he disobeyed the defendant's instructions and took the automobile out for his own pleasure is true, the defendant is not responsible for the accident."

From the foregoing cases we may deduce the following rules as thoroughly established: First, that a master is responsible for the negligence of his servant when engaged about the master's business and within the scope of his employment; second, that a master is not responsible for the negligence of his general servant, if at the time of the negligence he has become ad hoc the servant of another, and engaged in the business of that other, and under his direction and control; third, that the master is not responsible for the negligence of his general servant, if the negligent act was committed by the servant not in the prosecution of the master's business, but in the course of some private enterprise of his own; fourth, that even if, in the prosecution of that private enterprise, the servant uses the instrumentalities of the master for his own purposes, without the knowledge and consent of the master, the master is not responsible.

For the purposes of this discussion it must be conceded that the chauffeur was not engaged in the master's business, but was on a private pleasure trip of his own, and was using therein the master's automobile with the master's knowledge and consent. It is urged that the automobile was a dangerous instrumentality, and that, having been intrusted to the chauffeur, the liability of the master still attached because of its dangerous character. The automobile is not necessarily a dangerous device. It is an ordinary vehicle of pleasure and business. It is no more dangerous per se than a team of horses and a carriage, or a gun, or a sailboat, or a motor launch. There is no evidence that the chauffeur was not competent and qualified to run the machine. In fact, he was employed by the defendant for that very purpose. If a gamekeeper had borrowed his master's gun, and had gone from the estate on a hunting expedition of his own, and had negligently shot a man, would the master be responsible because he was using that instrumentality, which might be dangerous if carelessly used—the gun?

I do not think that the question of the ignorance or consent of the master has any bearing whatever upon his liability. The fact that the servant has used the horses or the automobile without his consent has probative force upon the proposition as to whether or not the servant was engaged in the master's business and was acting within the scope of his employment. The question is whether he was or not. If, without the knowledge of his master, he took the car from the garage to a machine shop to have it fixed, and an accident occurred, the fact of the want of knowledge on the master's part would not affect the liability, because the act would be within the scope of the servant's employment and in the prosecution of the master's business. If the chauffeur were granted a two week's vacation, and the master said to him: "I am going off on a trip, and will not need the machine. You may take it and use it for your own pleasure while I am gone"— I cannot think that he would be responsible for any negligence of the chauffeur during that period.

The whole doctrine of respondeat superior, by which one man is held responsible for another man's acts, rests upon the proposition that in doing those acts he represented the master and was engaged in his business; but, as said in the Higgins Case, supra:

"Beyond the scope of his employment the servant is just as much a stranger to his master as any third person. * * * And, if the servant step aside from his master's business for however short a time to do an act not connected with such business, the relation of master and servant is for the time suspended, and an act of the servant during such interval is not to be attributed to the master."

In Clark v. Buckmobile Company, 107 App. Div. 120, 94 N. Y. Supp. 771, Williams, J., said:

"The mere fact that the persons in charge of the machine at the time of the accident were employés of the defendant does not render defendant liable for whatever they did. Unless they were engaged in the defendant's business at the time the accident occurred, the defendant is not liable for any injuries to the plaintiff resulting therefrom. * * * Suppose they had taken a day off for pleasure, and had borrowed or leased the machine from the defendant to enable them to enjoy their outing; would the defendant be liable for any injuries resulting from their negligence in operating the machine while they were out upon the road? Suppose, after business hours any day, they had borrowed or leased the machine from the defendant to enjoy a few hours run across the country for their own pleasure; would the defendant be liable for any injuries caused by their negligent operating of the machine while they were out? It is quite apparent that in the cases suggested no liability of the defendant would result. The reason is that in order to establish liability the persons must not only be generally employés of the defendant, but must be employed in the defendant's business, and not merely in their own recreation and pleasure, at the time the injuries are caused."

The whole court concurred.

I reach the conclusion that upon principle and authority the charge was fatally erroneous in the matter excepted to, and that a question of fact was presented upon this evidence, which was whether the chauffeur at the time of the injuries complained of was acting within the scope of his employment. The testimony that he was not so engaged, coming from the defendant and his chauffeur, must be considered as

given by interested witnesses, and the jury might have refused to be bound by it; but nevertheless it should have been submitted for their consideration. It may be that it would be wise and in the public interests that responsibility for an accident caused by an automobile should be affixed to the owner thereof, irrespective of the person driving it, but the law does not so provide. As said by Rapallo, J., in People ex rel. Tweed v. Liscomb, 60 N. Y. 594, 19 Am. Rep. 211:

"It is the province of the courts to declare the law as they find it to be and adjudge cases accordingly, not to change or strain the law to make it fit any particular case."

It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

INGRAHAM and SCOTT, JJ., concur.

HOUGHTON, J. (dissenting). Of course, it is the law that a master is not responsible for the negligence of his servant, when the negligent act is committed by the servant while he is engaged in his own business, not connected with that of the master's, or when he is using an instrumentality belonging to the master contrary to the master's orders. To my mind the element of consent to the use of the instrumentality is important and controlling in the present case. It had been the habit of the defendant to allow his chauffeur to use the automobile to go to his meals, presumably to save time and expense. On the night in question the chauffeur had taken the defendant to his apartments. It was a part of his remaining duty to take the machine to the garage, for it could not be left in the street or kept in an apartment house. The chauffeur requested permission to deviate from the direct route to the garage to go uptown on some business for himself. The defendant told him that he might do that, "but to hurry back; only be gone a short while; come right back." The testimony of the chauffeur is to the same effect, but a little more specific, in that he says the defendant told him to be careful, and, if anything happened, to be sure and notify the defendant at once. The chauffeur was still in the pay of the defendant, and his duty was to properly care for the machine and to properly house it for the night. Even while he was gone on business of his own, this duty remained with him, and he was being paid for the performance of that duty by the defendant. It does not seem to me that the chauffeur was emancipated during the trip, notwithstanding it was for his own pleasure.

I concede that, if the chauffeur had taken the machine without the consent of the master and contrary to his orders, his act would then have been entirely outside the scope of his employment. In not one of the cases referred to in the prevailing opinion did the master consent to the use of the instrumentality which the servant was employing when the accident occurred, except in the case of Bard v. Hohn, 26 Pa. 482, where there was evidence that a father consented that his son, who was his servant, might take a team for his own purposes. The father denied giving the consent, and in the course of its opinion

the court remarked that it did not matter whether consent was given or not. In all the other cases it was a question whether the relation of master and servant actually existed, or whether the servant had acted without consent and contrary to orders. In the present case the relation of master and servant is admitted, and the taking of the instrumentality by which the accident was caused was with the express consent of the master, and it was a part of the duty of the servant to care for the very instrumentality which produced the injury.

The question was presented in Rounds v. Delaware, Lackawanna & Western Ry. Co., 64 N. Y. 129, 21 Am. Rep. 597, whether or not the master was liable where the servant abused his authority and was reckless in the performance of his duty and inflicted unnecessary injury, and the court laid down the proposition that:

"To make a master liable for the wrongful act of a servant to the injury of a third person it is not necessary to show that he expressly authorized the particular act. It is sufficient to show that the servant was engaged at the time in doing his master's business and was acting within the general scope of his authority."

In Quinn v. Power, 87 N. Y. 535, 41 Am. Rep. 392, a ferryboat captain deviated from his course without compensation to permit a boatman to embark on a passing canal boat tow in the Hudson river, and it was held that, although the master gave no consent and had no knowledge of the deviation, the servant was still engaged in the master's business.

A driver of a truck deviated from his return course to his master's brewery to visit a friend, and, leaving his horses unattended, they started, and were stopped by a stranger, who, in attempting to drive them back to the place where the driver left them, caused injury to a person in the street; and it was held, in Williams v. Koehler & Co., 41 App. Div. 426, 58 N. Y. Supp. 863, that the master was liable for the negligent act of the stranger, because the negligence of the driver in leaving the team unattended was the proximate cause of the accident.

In the case at bar it was the duty of the chauffeur to return the machine to its garage. The accident to the plaintiff happened while the chauffeur was returning from the place he had visited to the garage. While a powerful automobile may not, strictly speaking, be deemed a dangerous instrument, it may become so if recklessly driven. They are so dangerous that the Legislature has prescribed that their ownership must be registered and the driver licensed, and that speed in different localities must be regulated. Motor Vehicle Law, Laws 1904, p. 1311, c. 538. The defendant recognized this when he instructed his servant to be careful on the trip which he permitted him to make. If a railroad official should loan a locomotive to one of the company's engineers for the purpose of hurriedly visiting a distant locality, it could hardly be said that the engineer alone would be liable for injuries inflicted upon third persons.

I appreciate that the case is on the border line; but it seems to me that the chauffeur was engaged in the business of the master, and deviated from the direct course to house the machine by the master's express consent, and that therefore the relation of master and servant

still continued, and that the court was justified in refusing to charge as requested, or, under the proofs, to submit to the jury the question as to whether or not that relation had been severed.

I therefore vote for an affirmance of the judgment.

McLAUGHLIN, J., concurs.