## NEGLIGENCE OF CHAUFFEUR AND LIABILITY OF HIS EMPLOYER.

Circuit Court of Cuyahoga County.

L. Q. RAWSON, ADMINISTRATOR, v. THE OLDS MOTOR WORKS.*

Decided, May 27, 1912.

*Employer and Employee—Negligence of Employee in Use of Employer's Automobile—Employer Not Liable, When.*

When an employee of the owner of an automobile steps aside from his employment and uses his employer's automobile for his own purposes alone, during which use he negligently injures another, the employer is not liable for such injuries.

*Seaton & Paine*, for plaintiff in error.
*V. H. Burke*, contra.

NIMAN, J.; WINCH, J., and MARVIN, J., concur.

The action in the court below was brought by the plaintiff, who is plaintiff in error here, as administrator of the estate of Jerry Mahoney, deceased, to recover damages of the defendant for the death of the said Jerry Mahoney, claimed to have been caused by the negligence of the defendant, acting through one of its servants.

At the close of the plaintiff's evidence the trial court, on motion of the defendant, directed a verdict for said defendant. Proper steps were taken by the plaintiff to save the question for review, and by this proceeding in error we are called upon to determine whether the court erred in so directing a verdict for the defendant.

The facts are substantially as follows:

The defendant, the Olds Motor Works, is a Michigan corporation and maintains a branch office in the city of Cleveland, for the sale and distribution of automobiles manufactured by it, and for the repair and maintenance of such automobiles.

---

*Affirming *Rawson v. Olds Motor Works*, 12 N.P.(N.S.),145; judgment of Circuit Court affirmed by Supreme Court without opinion, June 29, 1914.

On the 28th day of September, 1908, William Booth was in charge of the Cleveland branch of the defendant's business as sales manager, and William Clark was employed there as a washer, and when not engaged in the work of washing cars, did general work about the branch office, and operated and delivered cars.

On the day mentioned Mr. Booth, having received a telegram from a main office of the defendant in Detroit, calling for the shipment to that city of a certain car then in the Cleveland Branch, by way of the Detroit boat, ordered and directed William Clark to take this car to the dock of the Detroit boat and ship it to Detroit. This order was given about the close of the business day. The branch was located on Euclid avenue near East 22nd street; the dock is at the foot of Superior avenue, west of the place of business of the defendant. The boat left at 10:15 o'clock in the evening, and in order that the car might be shipped it was necessary that it be at the dock by about 10 o'clock.

The usual route over which cars were taken from the defendant's branch was from the garage on Euclid avenue through an alley westerly to East 18th street, northerly on East 18th street to Euclid avenue, westerly on Euclid avenue to East 9th street, to Superior avenue, to the Detroit boat dock at the foot of Superior avenue.

On the day mentioned, Clark, about 6:30 P. M., took the car which he had been directed to deliver at the boat and drove to a restaurant on Prospect avenue, where he obtained something to eat. After he had finished eating, he invited two waitresses at the restaurant to accompany him on a ride, and the invitation being accepted, they all got into the car and after driving about in various directions, drove onto St. Clair avenue from East 9th street and started east, in a direction exactly opposite to that necessary to arrive at the dock of the Detroit boat, for the purpose of taking a trip to Euclid Beach. While driving east on St. Clair avenue in the vicinity of East 14th street, at about 8 o'clock P. M., Clark struck Jerry Mahoney, a boy 15 years of age and ran over him and killed him with the automobile, under circumstances tending to show negligence on Clark's part in the

operation of the car.  Later in the evening Clark took the car to the boat dock for shipment to Detroit.

The law of master and servant which we conceive to be applicable to this state of facts, is considered at length in *The Lima Railway Co.* v. *Little,* 67 O. S., 91.  In paragraphs 2 and 3 of the syllabus the law is stated as follows:

"2.   The test of a master's liability is not whether a given act was done during the existence of the servant's employment, but whether such act was done by the servant while engaged in the service of, and while acting for the master, in the prosecution of the master's business.

"3.   A master is not liable for the negligent act of a servant or employee, if at the time of the doing of such act the servant or his employee is not then engaged in the service or duties of his employment although the act be one which if done by such servant or employee in his master's service would be clearly within the course and scope of the usual and ordinary duties of such servant or employee."

In the opinion on page 88, it is said:

"In determining whether a particular act was done in the course or within the scope of the agent's employment, two things are always primarily considered.

"First.   Was the agent engaged at the time in serving his principal?

"Second.   Even though he was so engaged, was the act complained of within the scope of the agent's employment?

"The cases dealing with the subject have generally to do with one or the other of these questions, and can generally be classified under these two heads."

Applying the principles announced in that case to the facts before us in the cases under consideration, was Clark, at the time of the accident to Jerry Mahoney, engaged in the service of the Olds Motor Works, and was he in the prosecution of its business?

It is conceded that he was in the employ of the defendant, and that the fatal injury to the boy could not have occurred except for the facilities afforded Clark for committing the act complained of, by entrusting him with the automobile.

The only act required of Clark, however, was to take the car to the Detroit boat.  Whatever may have been his intention when

he started, he turned aside from the performance of the duty imposed upon him, and departed entirely from the scope of his employment with respect to that particular car. For all practical purposes he appropriated the car to his own use and devoted it to his own purposes, exclusively. In starting on a ride to Euclid Beach for his own pleasure, he was engaged in his own exclusive enterprise. By thus stepping aside from his master's business, to serve his own purposes, the relation of master and servant existing between the Olds Motor Works and himself was suspended, and no liability for his acts committed during the period when he turned aside from his master's business attached to the latter, unless, as is contended on behalf of the plaintiff in error, the automobile is a dangerous instrumentality, and the master liable for the negligent act of his servant, to whom he has committed the custody and control of such instrumentality, whether the servant is at the time of the injury complained of, in the master's business or otherwise.

It has been held that the duty of those who use dangerous agencies in the prosecution of their business, to observe the greatest care in the custody and use of them, can not be shifted by a master from himself to his servant, so as to exonerate him from the negligence of the servant in the use and custody of them, and that where they are entrusted, the proper custody as well as the use of them, becomes a part of the servant's employment by the master, and his negligence in either regard is imputable to the master, in an action by one injured thereby, and when the injury results from the negligence of the servant in the custody of the instrument, it is immaterial so far as the liability of the master is concerned, as to what use may have been made of it by the servant. *Railway* v. *Shields*, 47 O. S., 387.

The plaintiff in error invokes this principle and insists that the defendant in error having made its servant the custodian of a dangerous instrumentality, is liable for the negligence of its servant in the custody of such instrumentality, regardless of the use of it by him.

This contention would be sound if an automobile is to be classed as a dangerous instrumentality, but it can not be so classed. It is not inherently dangerous. In the hands of a care-

less or reckless operator in the public streets, it may become a dangerous instrument, but the danger arises from its use and operation, and not from any inherent quality of the automobile,

In *Cunningham* v. *Castle,* 127 N. Y. App. Div., 530, it was held:

"The owner of a motor car is not, as a matter of law, liable for injuries caused by the negligence of his chauffeur when not engaged in the masters business, but using the car with the master's knowledge and consent on a private pleasure trip of his own."

The court in answering the same argument advanced here said:

"It is urged that the automobile was a dangerous instrumentality, and having been entrusted to the chauffeur, the liability of the master still attaches because of its dangerous character. The automobile is not necessarily a dangerous device. It is no more dangerous *per se* than a team of horses and a carriage, or a gun, or a sailboat, or a motor launch. There is no evidence that the chauffeur was not competent and qualified to run the machine. In fact, he was employed by the defendant for that very purpose.

"If a game keeper had borrowed his master's gun and had gone from the estate on a hunting expedition of his own, and had negligently shot a man, would the master be responsible because he was using that instrumentality which might be dangerous if carelessly used, the gun?"

We are of opinion that the trial court did not err in directing a verdict for the defendant at the close of the plaintiff's evidence, and this being the only error complained of, the judgment of the court of common pleas is affirmed.