JOSEPH TEICH, Respondent, *v.* JACOB RUPPERT, Appellant.

First Department, June 16, 1922.

Motor vehicles — action for injuries caused by electric motor truck which started while left unattended in street — trial — instructions — not error to charge that lock on switchbox was for fastening switch so that truck could not be started, and that negligence could be predicated on absence of lock — error to charge that unattended truck was same as unattended horse and wagon in street, and that motor truck was dangerous instrument.

In an action to recover damages for injuries suffered by the plaintiff who was thrown down and his hand run over by an electric motor truck that was left unattended in the street with the switchbox unlocked so that it might be started by interference of third persons, it was not error for the court to charge that the lock upon the switchbox was made purposely for fastening the switch in case of an emergency such as existed in the present case, and that the jury might find negligence from the lack of a lock thereon.

It was error for the court in its charge to compare the leaving of the electric truck with its power turned off, thus making it impossible for it to be put in motion save by the unlawful interference of third persons, with the leaving of a horse and wagon unattended and unfastened in the street which might wander off of its own accord, or be suddenly frightened into flight and without the interference of any one.

It was error also for the court to charge immediately thereafter that the situation which the court had just erroneously compared with that of an unguarded and unsecured horse, was aggravated by the fact, of which judicial notice was taken, that motor cars are dangerous instruments unless properly cared for, and nothing more than engines, thus emphasizing further the danger of their use.

APPEAL by the defendant, Jacob Ruppert, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 23d day of March, 1921, upon the verdict of a jury for $10,000, and also from an order entered in said clerk's office on the 24th day of March, 1921, denying defendant's motion for a new trial made upon the minutes.

*Fitch & Grant* [*Grant C. Fox* of counsel], for the appellant.

*Whitman, Ottinger & Ransom* [*Jacob H. Goetz* of counsel; *Colley E. Williams* with him on the brief], for the respondent.

DOWLING, J.:

By its verdict the jury accepted the version of the circumstances attending the accident in question, as given by plaintiff and his witnesses. Plaintiff on the afternoon of March 21, 1919, was lawfully and properly on the west side of Eleventh avenue near its intersection with West Fifty-second street, in the borough of Manhattan, city of New York, when he heard a cry for help. He ran across the avenue to the east side, in the middle of the block between Fifty-first and Fifty-second streets, where a man was crushed between two automobile trucks. The more northerly of the trucks was a three and one-half ton electric truck belonging to the Anheuser-Busch Company, the other a five-ton electric truck belonging to defendant. The man caught between the two was Wiland, the chauffeur of the Anheuser-Busch truck, who had left his truck on the easterly curb, headed north, while he went for his lunch, which took an hour. Before leaving he locked the switch door and took his key with him. Upon his return he found his car in place with a horse-drawn truck and one automobile or more in front of it, but nothing behind. He adjusted the rear of the back brake of his car and sat down in the chauffeur's seat at the forward end, when he felt something bump into his truck from the rear. He jumped off his seat, and going back, saw it was defendant's truck which had struck his. There was no one on defendant's truck, but its switch was on. He saw that the switch handle, with which the power was turned on and off, was pointing up and that the power was on. The " copper fingers which give the contact " of the electricity that runs the car were sizzling, indicating that the current was on, and the motor was running, but the brake was not on. While Wiland was making an unsuccessful attempt to reach the switch in order to pull it, " the first thing you know, the two cars started and catches me between the two trucks."

It was while Wiland was thus caught between the two trucks that plaintiff ran to his assistance. He went to a point west of

the two trucks, near the front of defendant's truck and the rear of the other, and was attempting to get near Wiland to release him, when the defendant's truck, which theretofore had been at rest, suddenly started to move forward while plaintiff was still trying to help Wiland, and pushed the other truck forward. In this sudden movement of defendant's truck, the plaintiff was struck on his right leg and thrown over by the hub of its left front wheel, and as he rolled on the ground its left rear wheel ran over his left hand and crushed it. There was evidence tending to show that, as the power was off the Anheuser-Busch truck, the movement forward of the two trucks was due to the impetus of the defendant's truck, which still had the power on and was able suddenly to drive the two trucks (still in contact) forward, when the team of horses drawing the delivery truck immediately ahead of the Anheuser-Busch car ran away (without their driver) up Eleventh avenue, hitting the rear of the taxicab just ahead of them in their flight, and leaving a clear space ahead of the Anheuser-Busch truck into which the power of defendant's truck projected the former.

It was also proved that defendant's chauffeur had stopped his truck at the northeast corner of Fifty-first street and Eleventh avenue, in order to deliver bungs to a saloon at the northwest corner of these streets. He claimed that he stopped his truck with both wheels against the mudgutter, the switch shut down, the door of the switch box closed, the brake closed tight, and the controller in neutral position. He claimed he had been in the saloon about five or ten minutes when he heard a cry outside, and going out, found his truck standing against the Anheuser-Busch truck at the northeast corner of Fifty-second street. Both trucks were standing still, and his own truck was " sparking." He boarded it, shut down the power, reversed, and brought it to the middle of the street. He admitted that the switch was " a little bit put in — pulled in, in the gabel, and the switch was burning," but he insisted the motor was not running. He also saw some rope was burning in the bottom of his switch box, and he took it out and everything was over. On cross-examination he admitted that there was a door on the switch box which was supposed to be kept locked, so as to prevent any one moving the switch over, but that on the day in question the lock was out of order — " it is supposed to be repaired," and he finally said that the lock had been completely taken off to be repaired, and he had no key with him that day. He had found out the day before that the lock would not work, and he could not have locked the box on the day of the accident. It had always been his custom theretofore, when he stopped the truck and pulled the switch out

so as to disconnect the current, to lock the door of the box, as the result of which the handle was locked down at the bottom and could not be moved either up or down until the door was unlocked and opened.

There was evidence offered by defendant, which the jury may or may not have believed, to the effect that two boys had jumped on the truck, and one of them had " monkeyed around there with the handles," and as the car started, both of them had jumped to the sidewalk and run away.

The learned· trial court submitted the case to the jury in a charge in which he said that " there would be nothing at all to this litigation were it not for the fact of one point, and that is this, as to whether the chauffeur of the defendant's truck was guilty of negligence in leaving that car unguarded, even though he did cut off the power, in the condition in which that switch box was at the time of the happening of this accident." And further he said: " Here is the situation, gentlemen of the jury, as I understand it from the proof in this case. The chauffeur of this truck had a perfect right to stop at that northeast corner of Fifty-first street. He had a perfect right to put up his car there at that point for the purpose of making a delivery upon the northwest corner, but his duty was to exercise the care and caution of a prudent person to see that that car was left in a safe condition to do no harm to those who might come along there; and if he had done that, and if he did do it upon this occasion, and if the intervening act of the third parties, as testified to by the defendant's witnesses, the two boys who came there, got on the truck, commenced to play with the machinery, if it was through their intervention that that car was started, and did the damage that the testimony shows in this case, of course, the defendant in this litigation would not be liable therefor. But the claim made here by the plaintiff is this: That the chauffeur of that car failed to exercise the care and caution of a prudent person in failing to use the facilities which were given to him upon that truck to make it safe; that there was a lock upon that switch box, a lock made purposely for fastening that switch in the case of an emergency such as this, or any other that might arise, and that is a question of fact that I am submitting to you for determination in this case: As to whether the defendant's chauffeur was negligent in the respect named, and whether that negligence was the proximate cause of the happening of this accident, and if you find it was so, then concededly that negligence would bind this defendant corporation, and it must respond in such damages as you fix in this case in favor of the plaintiff."

Plaintiff took no exception to the statement of the theory of

defendant's liability. Defendant excepted to the parts of it which stated that the lock upon the switch box was made purposely for fastening it in case an emergency such as this might arise, and that the jury might find negligence from the lack of a lock on the switch box. We think these exceptions are untenable. Nor do we think that the verdict can fairly be said to be against the weight of the evidence, and we would not disturb it upon that ground.

But there are two errors in the charge of the learned trial court, to which exception was duly taken, which we think are so prejudicial to defendant as to require a reversal. They are embraced in the following quotation from the charge, which immediately follows the part referring to defendant's duty not to leave the car unguarded while the switch box was in its unlocked condition: " It is very analogous to the situation where a man drives upon the public highway and he desires to make a stop. He gets out of his horse vehicle, and he leaves it standing there unattended and unhitched. If that horse runs away and an accident occurs, of course, the owner of that vehicle is liable. Here you have a situation in my mind aggravated by this condition: That these motor cars — and we take judicial notice of the fact — are dangerous instruments unless properly cared for; useful and recognized instruments for travel upon the public highway, but they are nothing more than engines. In an electric vehicle, the power is by electricity; that is, the motor power; and in the steam or gasoline engines, they are propelled by the power that is generated by the use of the fluid or steam in question."

The first error was in the comparison of the leaving of an electric truck, with its power turned off (which was implied in this particular part of the charge), thus making it impossible for it to. be put in motion save by the unlawful interference of third parties, with the leaving of a horse unattended and unhitched, which may wander off of its own accord, or be suddenly frightened into flight without the unlawful intervention of any one. The second, and more serious error, was in immediately following this with the statement that the situation (erroneously compared to that of an unguarded and unsecured horse) was aggravated by the fact, of which judicial notice was taken, that motor cars are dangerous instruments unless properly cared for, and nothing more than engines, thus emphasizing further the danger of their use.

In *Cunningham* v. *Castle* (127 App. Div. 580) it was said: " The automobile is not necessarily a dangerous device. It is an ordinary vehicle of pleasure and business. It is no more dangerous *per se* than a team of horses and a carriage, or a gun, or a sailboat, or a motor launch."

In *Vincent* v. *Crandall & Godley Co.* (131 App. Div. 200) the court quoted with approval from 28 Cyc. 25 as follows: " While the operation of a motor vehicle is attendant with dangers not common to the use of the ordinary vehicle, it cannot be placed in the same category as locomotives, gun powder, dynamite and similar dangerous machines and agencies, and the rules of law applicable to dangerous instrumentalities do not apply."

And so in *Lazarowitz* v. *Levy* (194 App. Div. 400): " An automobile, however, is not deemed to be a nuisance or a dangerous machine."

The conclusion thus reached renders unnecessary the consideration of whether the recovery herein was excessive in view of the damages proven to have been sustained.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, PAGE and MERRELL, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.